UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATTI BROCK-CHAPMAN,                §
                                    §
    Plaintiff,                    §
                                    §
v.                                  §    CIVIL ACTION NO. 3:10-CV-454-B
                                    §
NATIONAL CARE NETWORK,              §
L.L.C.,                             §
                                    §
    Defendant.                    §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant National Care Network, L.L.C.'s Motion for Summary

Judgment (doc. 29). For the reasons stated below, the Court finds the Motion should be and hereby

is **GRANTED in part and DENIED in part**.

## I.

## BACKGROUND[1]

Plaintiff Patti Brock-Chapman brings this suit against Defendant National Care Network,

L.L.C. ("NCN") for claims of interference and retaliation under the Family and Medical Leave Act

("FMLA"), sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, and

age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). Her

claims are based on facts surrounding her discharge from employment at NCN. NCN is in the

business of selling specialty products to group health insurance providers. Brock-Chapman was hired

---

[1]The Court takes its factual account from the uncontested facts contained in the summary judgment record. Any contested fact is identified as the allegation of a particular party.

as a sales executive in October 2006 and remained in that capacity with NCN until her discharge on June 8, 2009. Brock-Chapman has over twenty years of experience in the industry; at NCN she was tasked with procuring new business. For all times material to the lawsuit, Brock-Chapman's immediate supervisor was Tom Pusic.

Brock-Chapman's husband was diagnosed with a recurrence of cancer in 2007 that eventually led to his passing in April 2009. Towards the end of 2008, Brock-Chapman took some paid time off ("PTO") to care for him and take him to various appointments. During this time, Brock-Chapman made comments to her supervisor Pusic as well as NCN President Dwight Mankin and Executive Vice President Karen Lurkowski about women being treated unfairly in the workplace. Brock-Chapman testified that Pusic admitted to the unfair treatment of women and stated it stemmed from CEO Tom Galas' perspective towards women. Brock-Chapman states she complained specifically to Lurkowski about the sex discrimination in the workplace in December 2007, November 2008, December 2008, and May 2009. Pl. Br. 10.

Brock-Chapman's complaints continued in January 2009 when she met with Mankin and Director of Human Resources Melissa Dexter to complain of the treatment of women in the company. Also in January 2009, her supervisor, Pusic, initiated a Communication Plan with Brock-Chapman to improve her communication skills after she received a "competent" review for her performance in calendar year 2008. Around the same time in January 2009, Brock-Chapman's husband's cancer metastasized and Brock-Chapman continued to use PTO to take him to his treatment appointments.

In March 2009 Brock-Chapman met with HR Director Dexter to discuss taking FMLA leave to care for her husband. Brock-Chapman wanted to take intermittent FMLA leave whereas NCN

wanted her to take full time FMLA leave. Brock-Chapman contends that in March 2009, Dexter mandated that Brock-Chapman take a week of PTO to think about taking full time FMLA leave. Brock-Chapman eventually took intermittent FMLA leave and continued working part time while caring for her husband until his death on April 12, 2009. Brock-Chapman took a week of bereavement leave provided by NCN and then returned to work.

Less than a month after returning to work, NCN, through Pusic, placed Brock-Chapman on a Performance Improvement Plan ("PIP"). Pl. App. 277. Brock-Chapman offers evidence that she was a top performer at NCN in terms of sales and that she was ahead of her sales goals for the year through May 2009. But Pusic noted a "lack of urgency" for her work in May 2009 and initiated the PIP. The PIP lacked specific metrics and required "significant improvement" within thirty days while also requiring Brock-Chapman to work forty hours per week in the Irving office, as opposed to working from home and the office as she had done previously. Brock-Chapman asked Dexter, Pusic, and Lurkowski about tightening the objectives in her PIP to provide more objective goals, but no adjustments or clarifications were ever made. On June 8, 2009 Brock-Chapman was terminated for the stated reason of failing to adequately improve her performance while on the PIP.

After her discharge, Brock-Chapman filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue dated December 7, 2009. Brock-Chapman then filed the complaint that forms the basis of the present suit, alleging violations of Title VII, the ADEA, and the FMLA. Defendant NCN now moves for summary judgment on all of Brock-Chapman's claims. Brock-Chapman has responded to the motion and NCN has replied, thus making the motion ripe for decision.

## II.

## LEGAL STANDARDS

A.    *Summary Judgment*

Federal Rule of Civil Procedure 56(a) provides summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the nonmovant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

B.      *The McDonnell Douglas Burden Shifting Framework*

The Court employs the *McDonnell Douglas* burden shifting framework to analyze retaliation claims under the FMLA, Title VII, and the ADEA as well as for discrimination claims under Title VII and the ADEA.[2] *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) (applying the *McDonnell Douglas* framework to retaliation claims under the FMLA); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (applying the *McDonnell Douglas* framework to retaliation claims under Title VII); *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to retaliation claims under the ADEA); *Grimes v. Tex. Dep't of Mental Health and Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to discrimination claims under Title VII); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998) (applying the *McDonnell Douglas* framework to age discrimination claims under the ADEA).

The *McDonnell Douglas* framework is applicable at the summary judgment stage of litigation. *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 574-75 (5th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000)). In order to survive summary judgment, the plaintiff must raise a genuine issue of material fact by satisfying the *McDonnell Douglas* framework. *Okoye v. University of Texas Houston Health Science Cntr.*, 245 F.3d 507, 512 (5th Cir. 2001).

---

[2] The *McDonnel Douglas* framework does not apply to FMLA interference cases. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir.1997) ("Applying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done.").

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Upon such a showing, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment decision. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant is able to articulate such a reason, "the presumption raised by the prima facie case is rebutted" and drops from the case. *Id.* at 508 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). After the employer has met its burden to produce a legitimate reason for the employment decision, the plaintiff then must demonstrate the employer's reason was pretext; in other words "that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. This burden merges with the "ultimate burden of persuading the trier of fact that he has been the victim of intentional" discrimination or retaliation. *St. Mary's,* 509 U.S. at 508 (citing *Burdine*, 450 U.S. at 255). The fact finder's disbelief of the employer's legitimate reason for the employment decision, coupled with the elements of the prima facie case, may suffice to show intentional discrimination or retaliation. *See St. Mary's*, 509 U.S. at 511.

C.      *The Family and Medical Leave Act*

The FMLA was created to protect an employee's right to take leave to attend to the medical needs of himself/herself or a family member. *See* 29 U.S.C. § 2601(b)(2). As a means of providing such protection, the FMLA contains two distinct provisions. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). First, the FMLA protects the substantive rights of an employee taking leave under the Act, including the right of an employee to return from leave to the same position or an equivalent position offering equivalent employment benefits, leave, pay and other terms and

conditions. 29 U.S.C. § 2614. To prevail on a cause of action for interference with FMLA rights, an employee must prove both that the employer interfered with, restrained, or denied his or her exercise of FMLA rights, and also that the employee was prejudiced by such violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). More specifically, the plaintiff must establish 1) that she is an eligible employee; 2) that the defendant is an employer as defined by the FMLA; 3) that she is entitled to leave under the FMLA; 4) that she gave notice of intent to take leave; and 5) that she was denied benefits to which she was entitled. *Grant v. JPMorgan Chase Bank, N.A.*, Civil Action No. H-11-500, 2012 WL 5966644, at *3 (S.D. Tex. Nov. 28, 2012). The *McDonnel Douglas* framework does not apply to FMLA interference cases. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997) ("Applying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done.").

The second distinct provision of the FMLA prohibits an employer's discrimination or retaliation against an employee for exercising her rights under the FMLA. *See* 29 U.S.C. § 2615. Under the *McDonnell Douglas* framework described above, an employee can make a prima facie case of retaliatory discharge under the FMLA by showing "(1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

In establishing the prima facie case under the FMLA, the plaintiff need not show the protected activity was the only cause of her termination. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). Further, the temporal proximity between an employee's FMLA leave and any adverse employment action may be sufficient evidence of causation to withstand a motion for

summary judgment. *Stephenson v. Nokia, Inc.*, No. 3:06-CV-2204-B, 2008 WL 2669492, at \*6 (N.D. Tex. May 1, 2008).

D.      *Title VII*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Under the *McDonnell Douglas* burden shifting framework, a plaintiff may prove a prima facie case of discrimination under Title VII by showing she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir.2001) (quotations and citations omitted). The plaintiff may alternatively satisfy the fourth element by demonstrating she was otherwise discharged because of her sex. *See Lawson v. S. Components, Inc.*, 410 Fed. Appx. 833, 835 (5th Cir. 2011) (holding that the fourth element of plaintiff's prima facie case may be satisfied by showing she was "otherwise discharged because of her race.").

Title VII further makes it unlawful for an employer to retaliate against an employee for opposing any unlawful discrimination. *See* 42 U.S.C. § 2000e-3. To make a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Gee*, 289 F.3d at 345.

E.     *The Age Discrimination in Employment Act*

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a prima facie case of age discrimination based on discharge by demonstrating "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either I) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) *otherwise discharged because of his age*." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003).

The ADEA additionally protects employees from retaliation for opposing unlawful acts of age discrimination. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996); *see* 29 U.S.C. § 623. A plaintiff establishes a prima facie case of retaliation under the ADEA by showing "(1) that he engaged in activity protected by the ADEA; (2) that there was an adverse employment action; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Id.* at 1225-26. Notably, the Fifth Circuit analyzes discrimination and retaliation under the ADEA in the same manner it analyzes adverse employment decisions under Title VII by using the *McDonnell Douglas* framework. *Mitchell v. Snow*, 326 Fed. Appx. 852, 854-55 (5th Cir. 2009).

## III.

## ANALYSIS

NCN has moved for summary judgment on each of Brock-Chapman's claims under the FMLA, Title VII, and the ADEA. *See generally* Def. Memo. Supp. Mot. Summ. J. ("Def. Memo."). The Court will consider each claim in turn.

A.     *FMLA Claims*

1.      FMLA Interference

NCN argues in its motion that Brock-Chapman was not denied a benefit under the FMLA to which she was entitled and that she was not prejudiced. Def. Memo. 16; *See Ragsdale*, 535 U.S. at 89. Brock-Chapman makes three separate claims of FMLA interference.

First Brock-Chapman claims she was entitled to intermittent FMLA leave and that NCN interfered by attempting to force her to take full time FMLA leave. Pl. Br. 24. Further, she claims she was prejudiced by NCN forcing her to take a week of PTO, thus depriving her of a week's worth of pay upon her termination. Specifically, Brock-Chapman claims that in a meeting on March 11, 2009, HR Director Dexter, on orders from NCN President Mankin and supervisor Tom Pusic, attempted to force Brock-Chapman to take full time FMLA leave despite Brock-Chapman's request for intermittent leave. Pl. App. 70. Brock-Chapman wanted to use intermittent leave to care for her husband on Fridays and Mondays after his chemotherapy sessions while maintaining as much FMLA leave as possible to spend with her husband before his death. Pl. App. 98-100.

At the March 11 meeting, Brock-Chapman claims that Dexter mandated Brock-Chapman take a week of paid vacation to think about taking full time FMLA leave. Brock-Chapman testified, "I wanted to take intermittent FMLA, but that was not given as an option to me." Pl. App. 78.

Brock-Chapman alleges the forced PTO was prejudicial to her; had she not been forced to take PTO that week, she would have worked and received her normal pay. She concludes that when she was eventually terminated, she would have been paid for that week of PTO if Dexter had not otherwise forced her to take the PTO. Pl. Resp. 26.

Eventually Brock-Chapman was allowed to take intermittent FMLA leave, but Brock-Chapman claims that NCN's initial opposition to intermittent leave at the March 11 meeting combined with the mandate that she take a week of paid vacation constitutes FMLA Interference. In other words, Brock-Chapman claims that NCN's initial resistance to her using intermittent FMLA leave interfered with her FMLA rights and that she suffered prejudice in the form of the week of PTO she was forced to take. *See Ragsdale*, 535 U.S. at 90.

NCN moves for summary judgment on this first FMLA Interference claim. NCN argues that even if Brock-Chapman had preferred to take intermittent leave, as a matter of law, employers may require an employee to take continuous FMLA leave, even if the employee prefers intermittent leave. *See Boddicker v. Esurance Ins. Servs., Inc.*, Cause No. CIV. 09-4027-KES, 2011 WL 6372869, at *6 (D.S.D. Dec. 20, 2011); *see also Kleinser v. Bay Park Cmty. Hosp.*, 793 F. Supp. 2d. 1039, 1045 (N.D. Ohio 2011). NCN also argues that requiring an employee to take paid time off does not cause economic harm because the employee is still receiving the pay, but is just receiving it sooner. Def. Reply 3.

The FMLA allows an employee to take intermittent leave to care for a spouse with a serious health condition if an intermittent schedule is "medically necessary." 29 U.S.C.A. §§ 2612(a)(1)(C) & 2612(b)(1). "Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such

as for chemotherapy." 29 C.F.R. § 825.202(b)(1). Intermittent leave may also be taken to "provide care or psychological comfort to a covered family member with a serious health condition." 29 C.F.R. § 825.202(b). Interference with an employee's FMLA rights includes "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

Brock-Chapman bases the details of her prescriptive FMLA interference claim on Department of Labor regulations. Such regulations "will be given controlling weight unless [they are] 'arbitrary, capricious, or manifestly contrary to the statute.'" *Downey v. Strain*, 510 F.3d 534, 538 (5th Cir. 2007) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). In addition to demonstrating a violation of a right established by a regulation, Brock-Chapman must establish "prejudice as a result of an employer's noncompliance." *Downey*, 510 F.3d at 540.

The Court first addresses NCN's argument that an employer may force an employee to take full-time leave, even if intermittent leave is requested. Both cases cited by NCN are from district courts in the Eighth Circuit and both rely on the Eighth Circuit's holding in *Quinn v. St. Louis Cnty*, 653 F.3d 745 (8th Cir. 2011). In *Quinn*, the Eighth Circuit held that to establish an FMLA Interference claim, in addition to demonstrating that the plaintiff was discouraged from using FMLA leave, the plaintiff must establish that she was denied entitlements under the FMLA. *Id.* at 753. The court in *Quinn* went a step beyond the Department of Labor's FMLA regulations and required the plaintiff to demonstrate an actual denial of leave to establish an FMLA Interference claim. *See id.* The court in *Boddicker* highlighted this additional requirement of a denial of leave and followed the Eighth Circuit directive as binding authority on the *Boddicker* court. 2011 WL 6372869, at *5.

Here, such authority is non-binding and the Court can locate no Fifth Circuit authority that adopts the Eighth Circuit's and NCN's argument in this regard. The Fifth Circuit requires only that an FMLA Interference claim based on a regulation "must not 'relieve[ ] employees of the burden of proving any real impairment of their rights and resulting prejudice.'" *Downey v. Strain*, 510 F.3d 534, 538 (5th Cir. 2007) (quoting *Ragsdale*, 535 U.S. at 90). Thus, based upon the plain language of the applicable regulations and the *Downey* opinion, this Court concludes that an FMLA interference claim may be established as stated in the Department of Labor regulations as long as the plaintiff is able to demonstrate prejudice; there is no additional requirement that the plaintiff demonstrate she was denied actual FMLA leave. *See* 29 C.F.R. § 825.220(b). More specifically, this Court concludes that an employer's discouragement of an employee's taking intermittent FMLA leave may constitute a denial of FMLA benefits when accompanied by prejudice to the employee. *See id.* Therefore, in viewing the evidence submitted in the light most favorable to Brock-Chapman, the Court finds a genuine issue of material fact exists regarding whether Brock-Chapman was discouraged from taking intermittent FMLA leave by HR Director Dexter at the March 2009 meeting.

Still operating within Brock-Chapman's first claim of FMLA Interference, in addition to establishing a genuine issue as to whether NCN discouraged Brock-Chapman from taking intermittent leave, Brock-Chapman must also demonstrate a genuine dispute that she was prejudiced. *See Ragsdale*, 535 U.S. at 90. The Court finds that there is a genuine dispute as to whether Brock-Chapman was economically harmed by being forced to take the week of PTO. If she in fact would have worked and would have been paid her normal salary for the week she was forced to take PTO, then upon her termination she would have been paid for the additional week of PTO. Therefore, the Court finds a genuine issue of fact exists as to whether Brock-Chapman suffered

prejudice in the form of this economic harm. As such, summary judgment is denied as to Brock-Chapman's first claim of FMLA Interference.

Second, Brock-Chapman claims NCN did not return her to an equivalent position in terms of privileges, perquisites, and status after her FMLA leave and thus interfered with her FMLA rights. *See* 29 U.S.C. § 2614. In support, Brock-Chapman claims that before her FMLA leave she was allowed to work from home. Then, less than a month after returning from FMLA leave, she was placed on a PIP that required her to work forty hours a week in the office. Pl. Br. 27.

NCN moves for summary judgment on the basis that the PIP requirement that Brock-Chapman work in the office was completely independent of her FMLA leave and was triggered by poor performance and a lack of urgency. Further, NCN moves for summary judgment stating there was no change to Brock-Chapman's job upon her return.

NCN presents the following evidence in support of its motion. After taking her FMLA leave and bereavement leave following her husband's death, Brock-Chapman returned to work on or about April 19, 2009. According to Pusic, three weeks after Brock-Chapman returned to work he began attempting to develop a sense of urgency for work in Brock-Chapman. Pl. App. 228: Pusic Memo. After one such conversation regarding urgency in April, Brock-Chapman sent an email to Pusic that she needed to take PTO to watch her son's football practice and another afternoon off to pack for an upcoming conference. *Id.* According to Pusic, this email triggered in his mind that he "needed to tell [Brock-Chapman] that she must spend at least 40 hours per week in the Irving office." *Id.* Pusic, along with Dexter and Mankin, then determined a PIP was necessary and the PIP, including the requirement of 40 hours in the office each week, was given to Brock-Chapman on May 11, 2009. *Id.* Later that day Brock-Chapman sent Pusic an email stating she would take four hours of PTO the

next day. Pl. App. 278. Pusic forwarded Brock-Chapman's email to Dexter with the statement "[h]ow's this for a sense of urgency?" *Id.*

Thus, based on this evidence, NCN moves for summary judgment on the basis that the PIP was predicated on performance problems and a lack of urgency, not on her FMLA leave. NCN also argues that simply requiring Brock-Chapman to perform her work at the office was not a change in violation of the FMLA.

Brock-Chapman responds specifically to NCN's position that it was the email asking for PTO that "triggered" the forty hour requirement. Pl. Br. 26. Brock-Chapman responds that she had over seventy-seven hours of PTO available when she was terminated and thus it was not just the request for PTO that "triggered" the requirement she work in the office, but also her recent return from FMLA leave. *Id.* Brock-Chapman argues this asserted lack of urgency clearly references the FMLA leave Brock-Chapman took to care for her husband.

The Court finds there is a genuine issue of material fact as to whether the forty hours-a-week in the office was equivalent to the position Brock-Chapman held before her FMLA leave. The timing of the PIP, the in-office requirement, and the abundance of PTO Brock-Chapman still had at the time of her discharge raise a genuine dispute as to the material facts surrounding the justification for the PIP. As such, summary judgment is denied regarding this second claim for FMLA Interference.

Third, Brock-Chapman alleges in her complaint that NCN interfered with her FMLA rights by using her FMLA leave as a negative factor for the PIP which led to her discharge. Pl. Comp. ¶ 47; Pl. Br. 28. Again, NCN moves for summary judgment arguing that the PIP was based on her poor performance, not her FMLA leave.

In support of NCN's argument that the PIP was based on Brock-Chapman's poor performance, NCN submits evidence that Brock-Chapman wrote an admittedly unprofessional email to Pusic in November 2008 and that Brock-Chapman and Pusic had communication and supervision issues. Def. Memo. 8. Brock-Chapman's performance review for the calendar year 2008 was "competent" which was her lowest rating at NCN. *Id.* Further, in January 2009 Pusic spoke with Brock-Chapman about her low amount of D sales prospects and Brock-Chapman agreed she needed to generate more D prospects. Def. App. 31. Brock-Chapman and Pusic exchanged further emails regarding Brock-Chapman's communication skills which culminated in a Communication Plan in January 2009. On January 26, 2009 Brock-Chapman had a meeting with Mankin and Dexter regarding the Communication Plan. Brock-Chapman admitted that after this meeting she thought her job might be in jeopardy. Brock-Chapman Dep. 145:22-146:14 (Def. App. 29-30).

Brock-Chapman responds first by detailing what she argues is her good performance at NCN. From 2006 through 2007 Brock-Chapman's supervisors praised her "never give up attitude" and stated she was very team oriented. Pl. App. 266, 223. Her review for calendar year 2007 rated her as excellent. Pl. App. 219-222. There was no mention of communication problems in the 2007 report before Pusic became her supervisor. *Id.* Brock-Chapman further brings evidence that she was the number one or two ranked salesperson throughout her time at NCN.[3]

In addition to responding with evidence of her good performance at NCN, Brock-Chapman argues that the stated "lack of urgency" for work was not due to a failure of sales goals because she was ahead of all sales targets for the year. Pl. App. 71, 105. Thus, Brock-Chapman argues the only

---

[3] NCN moves to strike to Brock-Chapman's self serving statements in its Motion to Strike at doc. 43. The Court denies the motion to strike as to these specific statements via separate order. Please see the separate order regarding the Motion to Strike for a more detailed explanation.

explanation driving Pusic's implementation of the PIP was that Pusic was upset by Brock-Chapman's FMLA leave. Thus, Brock-Chapman argues, Pusic used the FMLA leave as a negative factor in establishing the PIP in violation of the FMLA.

In viewing all summary judgment evidence in the light most favorable to Brock-Chapman, Brock-Chapman has established a genuine dispute as to whether her FMLA leave played a factor in the PIP that eventually led to her dismissal. As such, summary judgment is denied for this and all of Brock-Chapman's FMLA Interference claims.

2.   FMLA Retaliation

NCN does not take issue with Brock-Chapman's prima facie case for FMLA retaliatory discharge. *See* Def. Memo. 17. Instead NCN moves for summary judgment on the basis that Brock-Chapman was terminated for failure to adequately improve her performance while on the PIP, which is a legitimate, nonretaliatory reason for discharge. NCN supports its motion with evidence of performance problems predating Brock-Chapman's FMLA leave, specifically pointing to the communication issues with Pusic in January 2009 and other performance issues discussed above. The PIP required significant development in communication, working full time at the office, developing a more robust prospect list, an increase in prospect meetings, and actual sales. Def. App. 113 (PIP). Pusic testified in his affidavit that by June 2009 Brock-Chapman's performance had not adequately improved, so he recommended NCN terminate her employment, which it did. Def. App. 89 (Pusic Aff. ¶ 12).

The Court finds NCN has satisfied its burden to provide a legitimate, non-retaliatory reason for discharge under the *McDonnell Douglas* burden shifting framework and thus the presumption created by the prima facie case drops from this claim. *See Burdine*, 450 U.S. at 255. Thus it is now

Brock-Chapman's task to demonstrate "that the proffered reason was not the true reason for the employment decision." *Id.* at 256.

Brock-Chapman responds that NCN's reason for her termination was pretextual. Brock-Chapman argues that the temporal proximity of her termination less than a month after her leave alone demonstrates pretext. Next, Brock-Chapman argues that the actual PIP evidences pretext. First, the vague mandate in the PIP to make "significant improvements" was never clarified despite repeated attempts by Brock-Chapman to come to an objective understanding of what "significant improvements" meant. Pl. App. 10 ¶¶ 38-39. Dexter forwarded one such email request for clarification to Pusic with a single word, "exhausting," which Brock-Chapman argues evidences animus. Second, the PIP required improvement of actual sales, but Brock-Chapman presents evidence that she was 43% ahead of her sales plan for the year. Third, Brock-Chapman argues that the length of time given to Brock-Chapman to improve evidences pretext. The "form" PIP at NCN provides for ninety days and specific objectives but Brock-Chapman was only given thirty days and what Brock-Chapman argues were vague objectives. Pl. App. 272-73 ("form" PIP). Fourth, Pusic and Brock-Chapman were supposed to have regular calls to monitor her progress, but Brock-Chapman presents evidence that Pusic skipped five of the eight calls and failed to reschedule them. Pl. App. 103-04. Thus, Brock-Chapman argues that the PIP was simply a step to termination and as such was pretextual.

NCN replies to challenge the claim of pretext. Specifically NCN argues that subjective and challenging goals in a PIP do not constitute evidence of pretext. Next NCN argues that Brock-Chapman's self serving statements about her sales record should be disregarded by the Court and that Brock-Chapman had admitted performance problems relating to communication before her

FMLA leave. Def. Reply 6. NCN argues that satisfactory performance in one aspect of a job does not excuse unsatisfactory performance in other job requirements, such as communication for Brock-Chapman. Def. Reply 6-7.

Regarding NCN's reply arguments, the Court finds that the contrast between the PIP given to Brock-Chapman and the "form" NCN PIP could lead a reasonable jury to find the PIP pretextual. Next, while Brock-Chapman's statements of her own performance are self serving, they are not inadmissible and thus the Court may properly consider them. Given the evidence detailed above regarding pretext, and when such evidence is viewed in the light most favorable to Brock-Chapman, Brock-Chapman has established a genuine dispute as to the reason for her discharge and as such summary judgment is denied regarding Brock-Chapman's FMLA Retaliation claim.

B.   *Brock-Chapman's Claims Under Title VII and the ADEA*[4]

1.   Prima Facie Case for Sex and Age Discrimination Claims

NCN does not dispute that the first three elements of the prima facie case for sex and age discrimination have been met, but argues that Brock-Chapman cannot establish the fourth element because Brock-Chapman was not replaced and Brock-Chapman cannot offer any evidence of a similarly situated employee. Def. Memo. 19. As stated above, a plaintiff may establish the fourth element of the prima facie case for discrimination under Title VII and the ADEA three ways: 1) replacement by someone outside the protected class, 2) comparison to a similarly situated individual outside the protected class, or 3) that the plaintiff was otherwise discharged because of her age or sex. *Palasota*, 342 F.3d at 576; *see also Lawson*, 410 Fed. Appx. at 835.

_____

[4]The Court will consider the claims under Title VII and the ADEA together as the framework for analyzing such claims is the same. *See Mitchell*, 326 Fed. Appx. at 854.

Brock-Chapman claims she has made a prima facie case for both age and sex discrimination. She first claims that NCN hired a replacement when it hired a younger male as a sales representative nearly a year after her discharge. Pl. Br. 35. The Court finds replacement nearly a year after Brock-Chapman's termination does not qualify as replacement under the prima facie case.

Next, Brock-Chapman attempts to establish a prima facie case by demonstrating she was otherwise discharged because of her age and sex. As to age discrimination, Brock-Chapman directs the Court to a collection of alleged statements by employees of NCN. According to Brock-Chapman, Pusic stated on a few occasions from late 2007 through mid-2008 that "new blood" was needed in the organization. Pl. App. 24, 59-61. Brock-Chapman also offers hearsay evidence, without an exception, that Pusic told Dexter who then told Brock-Chapman that Pusic wanted someone younger in the sales role. Pl. App. 4 ¶ 12. The Court strikes this statement as inadmissible hearsay and does not consider it when determining whether Brock-Chapman has established a prima facie case for age discrimination. Brock-Chapman next presents a stray remark from Vice President Connaway that they, Connaway and Brock-Chapman, were "getting too old for this work." The most potentially age discriminatory statement came from Mr. Steve Wagoner, who was the Chief Financial Officer at NCN at the time of the comment. Brock-Chapman alleges that when she was asking questions about her compensation plan, Wagoner responded that maybe she was "getting too old for this game" and "newer, younger" sales representatives would not challenge or over-think the compensation plan like she had. Pl. Br. 36. These statements are the extent of the age discriminatory evidence offered by Brock-Chapman.

In order to satisfy the fourth prong without replacement or a similarly situated employee, Brock-Chapman must establish she was "otherwise discharged due to her age." *Palasota*, 342 F.3d

at 576. Brock-Chapman has made no connection between the above comments and the decision NCN made to discharge her and therefore has failed to show, even by the prima facie standard, that Brock-Chapman was otherwise discharged due to her age. Therefore, because Brock-Chapman has failed to establish a prima facie case for age discrimination under the ADEA, summary judgment is proper and hereby granted for Defendant on the ADEA discrimination claim.

The Court now turns to Brock-Chapman's prima face case for sex discrimination under Title VII. NCN again argues that Brock-Chapman was not replaced and cannot compare herself to a similarly situated male, and thus cannot make a prima facie case. But a Title VII plaintiff may meet the fourth prong of the prima facie case by demonstrating she was otherwise discharged because of her sex. *See Lawson*, 410 Fed. Appx. at 835. Brock-Chapman must provide evidence from which "a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Palasota*, 342 F.3d at 575.

Aiming to meet the fourth prong of the prima facie case, Brock-Chapman offers evidence of differential treatment based on sex in the workplace. Specifically, she states she was ignored after speaking out about gender issues by CEO Galas and that her immediate supervisor, Pusic, agreed with her that there was an unfair, discriminatory culture within the organization. Pl. App. 115. Brock-Chapman also alleges one isolated touch on the arm with a sexual tinge from CEO Galas in 2006. Pl. App. 48-50. Brock-Chapman also presents evidence that male peers were retained for longer periods of time with worse sales records without being terminated. Pl. App. 26-28; 311-314. Based on the totality of Brock-Chapman's evidence, and in prima facie terms, a reasonable fact finder may conclude that NCN intended to discriminate against Brock-Chapman on the basis of her sex

by discharging her. Therefore, Brock-Chapman has met the prima facie case for sex discrimination under Title VII.

> 2.    Prima Facie Case for Sex and Age Retaliation Claims

To review, to establish a prima facie case for retaliation under Title VII and the ADEA, Brock-Chapman must show 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) there is a causal link between the protected activity and the adverse employment action. *See Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 187-88 (5th Cir. 2012). NCN argues that Brock-Chapman cannot establish the prima facie case for her retaliation claim under Title VII or the ADEA. NCN alleges that Brock-Chapman only complained of discrimination after her discharge, thus making a retaliatory discharge impossible as her only comments were after her discharge. Further, NCN argues there can be no causal link between protected activity and an adverse employment action when there is a long period of time separating the two. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (Twenty month period between protected activity and adverse action does not satisfy prima facie case for retaliation). Here, NCN alleges that Brock-Chapman was discharged nearly two years after any activity that could be considered protected and thus Brock-Chapman cannot establish the prima facie element of a causal connection. Def. Memo. 24.

Brock-Chapman fails to state a prima facie case for retaliatory discharge under the ADEA. Brock-Chapman fails to point to any protected activity under the ADEA or a causal connection between her discharge and any activity protected by the ADEA. Therefore, summary judgment is granted for NCN regarding Brock-Chapman's ADEA retaliation claim.

But Brock-Chapman is able to demonstrate a prima facie case for sex retaliation under Title VII. Brock-Chapman complained of gender bias, a discriminatory culture against women, favoritism towards certain women, an expectation that women be submissive, and unfair backlash against females in the office. Pl. Br. 44. These complaints began in July or August of 2007 and continued through 2008 to within a month of Brock-Chapman's discharge in 2009. In reviewing Brock-Chapman's evidence, the Court finds that a reasonable fact finder, drawing all inferences in favor of Brock-Chapman, could conclude that Brock-Chapman engaged in protected activity under Title VII, that she was discharged, and that a causal connection existed between the protected activity and her discharge. Therefore, Brock-Chapman has met the prima facie case for retaliatory discharge in violation of Title VII.

To summarize, Brock-Chapman established a prima facie case for sex discrimination and sex retaliation under Title VII. She failed to make a prima facie case for age discrimination or age retaliation under the ADEA and, as such, summary judgment is granted for Defendant on Brock-Chapman's ADEA claims. The Court now moves forward with the *McDonnell Douglas* framework only with the Title VII sex discrimination and retaliation claims.

3.    NCN's Legitimate, nonretaliatory and nondiscriminatory reason for discharge

NCN offers evidence that Brock-Chapman's employment was terminated for failure to adequately improve her performance after she was placed on a PIP. Def. Memo. 20. The Court finds NCN has met its burden of production in terms of offering a legitimate, nonretaliatory and nondiscriminatory reason for discharge and the presumption created by the prima facie case thus drops from the case. *See Burdine*, 450 U.S. 255-56. The burden is now again on Brock-Chapman and,

at this summary judgment stage, she must establish a genuine dispute as to the pretextual nature of NCN's legitimate reason for her termination. *See St. Mary's*, 509 U.S. at 507-08.

<u>4.</u>    <u>Brock-Chapman raises genuine dispute regarding pretext</u>[5]

NCN argues its reason for terminating Brock-Chapman was not pretextual. In support, NCN argues that Brock-Chapman's comments about a glass ceiling for women at NCN are irrelevant to Brock-Chapman's discharge because she was not denied a higher level position and because there were numerous female executives at NCN. Next, NCN argues that Brock-Chapman's allegations about Galas' affairs with various women at NCN are inadmissible.[6]

Brock-Chapman, in her response and as described above in the FMLA Retaliation section, focuses her argument primarily on the PIP. The PIP calls for "immediate progress" and "significant improvement" in communication, sales, and developing prospect lists for sales, in addition to other things. Pl. App. 277. Yet, Brock-Chapman offers summary judgment evidence that she was ahead of her sales goals at the time the PIP was implemented. Pl. App. 71, 105.

Brock-Chapman continues her argument that the PIP was pretextual by comparing it to the guide Performance Improvement Plan at NCN. The guide calls for ninety days to improve, whereas Brock-Chapman was given only thirty days. Pl. App. 272, 277. The guide calls for the supervisor to "[b]e specific about what needs to be improved" while Brock-Chapman was given a broad directive for "significant improvement." *Id.* Brock-Chapman asked multiple times for clarification about the PIP and was never answered. Pl. App. 10 ¶¶ 38-39. Further, the PIP required Brock-Chapman to

---

[5] The Court also considers the arguments of the parties regarding pretext discussed *supra* in the FMLA retaliation section.

[6] Regarding the specific evidence Brock-Chapman has offered of the affairs, the Court agrees and strikes the evidence of the affairs, as explained in more detail in the separate order addressing Defendant's Motion to Strike.

have two calls per week with Pusic, but Brock-Chapman states only two of the eight scheduled calls happened, with Pusic failing to cancel or reschedule five of the missed calls. Pl. App. 10 ¶ 40.

A reasonable jury, crediting Brock-Chapman's testimony and evidence, and drawing inferences in her favor, could permissibly conclude that the PIP was pretextual and that the real motivation for Brock-Chapman's termination was prohibited by Title VII. Therefore, because Brock-Chapman has raised a genuine issue of material fact regarding the pretextual nature of NCN's legitimate reason for her termination, summary judgment must be denied regarding Brock-Chapman's Title VII claims.

## IV.

## CONCLUSION

The Court grants in part and denies in part Defendant NCN's Motion for Summary Judgment. NCN's Motion is **GRANTED** as to the ADEA discrimination and retaliation claims. NCN's Motion is **DENIED** as to the FMLA interference, FMLA retaliation, Title VII sex discrimination, and Title VII sex retaliation claims.

SO ORDERED.

SIGNED: January 16, 2013.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE